Our next case for argument is Case No. 20-2046, Walker v. Bank National Association. We're ready to hear from the appellant. Good morning, Your Honors. May it please the Court. My name is Aaron Lawson. I represent the Plaintiff Appellant, Berkeley Walker. Your Honors, there is a long and broadly held understanding that the transaction at issue here, the covering of a checking overdraft, is a loan or an extension of credit. And in our view, neither the Court below nor the Bank here on appeal has provided anything from the text of the regulation at issue, 12 CFR Section 7.4001, that would counsel, much less compel, a different understanding in this particular context. Now, outside of this regulation... When you say that there's rafts of case law, what cases specifically do you rely on? You mean, what cases do we rely on for our position that this is not a loan or an extension of credit? That it is an extension of credit. Well, in the context of this regulation, we would, of course, rely on the Farrell case, and we'd point to Judge Liebes' dissent in the First Circuit. But I think our broader point is that outside of this regulation, it's basically unanimous. When an overdraft is paid, credit is extended. That was the position of the common law. It appears to have been the position articulated by the Supreme Court in 1904 in the Citizens National Bank case. It's consistent with the economic reality of the transaction. It is a position that is embraced by nearly every banking regulation we could find on the books today, with the sole exception of the one before the court today. And it appears to be a position that's been taken by OCC itself on at least two occasions. So we discuss in the papers the 2005 Joint Guidance on Overdraft Protection, which the comptroller signed, which states very plainly when an overdraft is paid, credit is extended, and treats overdraft protection as a type of short-term credit product, which is exactly how we think it should be treated here. We don't discuss it. Counsel, could I just ask you, is it possible for overdraft coverage to be a loan, as you argue, and at the same time an overdraft fee not to be interest? Is that possible? I do think that is theoretically possible. One of the points we make is that, and this is made in the Smiley decision as well, that if these fees are specifically assigned to some service or function other than making the loan, then they would not be considered an interest charge under this regulation, or I think generally in usury law. But our allegations at this moment, and we're here obviously on the 12B6 appeal, are that there are no other services provided and that these fees are imposed simply because credit has been extended. So at the moment, I think the answer is that these fees are interest charges under the regulation in our allegations. Let me ask you then about the regulation. The 7.4001 regulation, it lists some examples of what is and what is not interest. But it doesn't mention extended overdraft fees, correct? Correct. So you're not arguing then, are you, that the regulation unambiguously includes extended overdraft fees? Well, I would slightly disagree. We're not arguing that in this, what OCC itself has described as a non-exhaustive list of types of interest charges, that these fees are included. But it is our position that this phrase, extension of credit, has long been understood to include this type of transaction. And given our allegations that the fees, the extended overdraft fees that are imposed solely because credit has been extended, they are unambiguously covered by the regulation, putting that non-exhaustive list to one side. There's nothing explicit in the regulation that answers the question here, correct? Correct. So why wouldn't we go to the 2007 letter? That seems to be the guiding light here, isn't it? Well, I think there are three reasons, at least, not to defer to the letter, as the bank asks under Skidmore. First, again, we have what I would consider an unambiguous text. This phrase, extension of credit, is not – I mean, there's no ambiguity there. Second, I think it is notable that the letter never really – Well, counsel, can I just draw a distinction? There's extension of credit, but the question is extended – here we're talking about overdraft, extended overdraft fees, right? Right. So I'm back to my original question. Don't you have to define what that is? Well, and that's why I conceded earlier that it is theoretically possible that these could be interest or non-interest charges. I agree there's no single rule that governs how we – in the regulation itself, no single rule that governs how we look at these charges. But that is something that OCC – Well, that makes the regulation ambiguous, does it not? Well, this is, I think, the nub of the disagreement. We think that it does not, that we don't need a specific statement about how you treat these charges in the regulation to find ambiguity because the overarching term, extension of credit, is not one that is considered ambiguous. But to the 2007 letter to Judge Matheson's question, so OCC had said six years before it issued this letter that it had been persuaded by commenters that there were complex and fact-specific reasons not to issue sort of an all-purpose rule governing these fees, that instead it would leave the issue unaddressed by the regulation. And what I find significant in the 2007 letter is that the letter seems to embrace the kind of all-purpose rule that OCC had issued just six years earlier. And it does so not just – it doesn't just come up with this rule, but it does so in a way that finds that this isn't even a credit extension, right? I mean, that's the last part of the letter. It says when the bank extends you money and expects to be repaid, it's not creating a debt. And that sort of piece of the puzzle there with the letter is inconsistent with what OCC has said elsewhere, and it is inconsistent even with asking in 2001 should we treat the difference in fees that a bank collects when it covers an overdraft as opposed to when it lets the check bounce as interest charges, right? OCC said explicitly you could view this as an extension of credit. It said in 2005 that it was an extension of credit. But here we are in the letter in 2007 saying that this isn't even a transaction that creates a debt. And, you know, I'm not saying that an agency can't change its position, but ordinarily we ask the agency to at least acknowledge why it's changed its position. You're saying in the letter, the 2007 letter, that the OCC makes that pronouncement that it does not create a debt, an extension of credit. You find that in that letter? Well, I think that is at the very least the clear implication of the very end, right? Because the fight in the California case was over whether imposition and then collection of these fees was a function of the debt, was saved by the debt collection savings clause in 7.4007. And OCC's response is, well, this isn't even an issue about debt collection. You know, you're just rebalancing debits and credits in the account. You know, you're not collecting a debt, which I think is a pretty stark departure from the way this transaction has been treated otherwise that requires some explanation. And so that's, that I think is the second reason why your honor should not find this letter to be a persuasive source of guidance. The third, and this really comes from the argument. Does the 2007 letter refer to and discuss the issue we have here? The extended overdraft fees and whether or not that is an extension of credit, which would result in our treating it as interest. Not, not in so many words. OCC acknowledges that the overdraft protection program that it was considering included imposition of extended fees, but there's no explicit discussion of the specific issue we have in front of us today. Was there even an explicit discussion of extended overdraft fees? Not beyond mentioning that they were part of the program used by the bank that requested the interpretive letter. So the third reason that I think deference under Skidmore is inappropriate here is, and this comes from an argument the bank is making here on appeal, it points to a footnote in the 2001 notice when OCC said, commenters have raised complex and fact specific concerns that persuade us that we can't promulgate a single rule governing these types of fees. It dropped a footnote and the footnote says very simply, in the most recent decision of which we are aware of, federal court held that these fees were not interest in its citation to the video tracks decision, which receives pretty heavy discussion in the papers. Are you talking about a footnote in the 2007 letter? No, in the June 2001 notice of rulemaking that OCC. June 2001, what footnote? Footnote 11. Thank you. I'm working from memory here, but I believe the citation is 66 Federal Register 34784 and the pin site is 34787. So the bank here on appeal is drawing a straight line from that footnote to the 2007 letter. And I think that's that's telling because what it suggests, and I think the bank may be onto something here is that OCC isn't it wasn't in 2007 exercising independent judgment about the best way to interpret the regulation. But what it was doing was interpreting it in the way it thought the case law required that it read the video tracks decision as applying to all of the fees imposed by the bank that asked for the letter in 2007. And and so just simply construed them as not interest charges. And if that's the case, and again, I think there's reason to believe that that may well be what's happening. We're not we're not talking about Skidmore deference anymore because Skidmore itself. Right. This is a program, a regulation that had uncertain application to a particular situation. And the court said, well, you know, the secretary of labor has a lot of experience administering this regulation and has reached a reasoned judgment about how to administer it in this situation and one that we find persuasive. But when we're talking about just interpreting the case law, that's outside the agency's substantive expertise. So, yes, could I could I just you mentioned the video tracks decision a couple of times. There's a passage in that decision I want to ask you about. It pointed out that the part of the regulation seven point four zero zero one C. And I'm quoting declared that the federal definition of interest does not take precedence over the manner in which the states define the term. I have to say, when I read that, it made me wonder, especially given that the court then applied Florida law to determine that the overdraft fee was not interest. Why isn't the issue here a matter of state law instead of federal law? Well, I believe that when our position is that when when OCC promulgated the regulation at issue in 1996, that it resolved this question in terms of federal law. Right. One of the disputes sort of percolating in the case is dealing with the credit card late fees. Was do we define interest for the purposes of this of this dispute with respect to state law? Well, I understand. And I think that's how I probably would have answered my own question. But that that passage in video tracks has been troubling me ever since I read it. So I wanted to get your your answer. Yeah, well, I think this there are several issues, I think, with the video tracks decision. And this is one of them. I mean, there's a whole discussion about applying state usury law to a usury claim against a national bank. And I think there's no dispute that that those claims are preempted. And that that is just the passage you raise is of a piece with that discussion. And it's just one of several issues with the decision. My time is short. If the panel has no other questions, I'd like to reserve the balance of my time. Thank you. We're ready to hear from the appellee. Bring your honors. He's the court and counsel. My name is Sarah Poston with Frederick lawyers. I have with me, Mike Medina, and we represent the defendant and appellee. Be okay. FNA putting aside for just a moment. The multiple district court opinions and circuit court of appeals opinions and the OCC interpretations that support our position. I'd like to just start with the basics from its inception. The National Bank Act has authorized banks to perform multiple functions, including on one hand, lending functions, the extension of credit. And on the other hand, deposit functions receiving deposits. Here we have today, the regulation that we're focused on itself has two parts. 7.4001 that defines interest for as any payment compensating a creditor or prospective creditor for an extension of credit and sets limit on that interest. And on the other hand, 7.4002, which covers all other national bank charges and fees, including deposit account charges and fees. If so, the only question presented by this appeal is whether be okay. Extended overdraft fees somehow, though, there they arise out of a deposit account agreement and deposit account context somehow belong under 7.4001 definition of interest as compensation for an extension of credit. Very importantly, and as the court has acknowledged, the Mr. Walker acknowledges and admits that initial overdraft fees also part of the same overdraft. Service that arises in the deposit account context that those initial overdraft fees do not constitute interest and do not belong under 7.4001. We respectfully urge the court to affirm the district court in finding that there is no claim here and following the 1st Circuit and the 11th Circuit Courts of Appeals. In order to dismiss Mr. Walker's claim, is it is it your argument then that because this all occurs within the context of a deposit account. That the extended overdraft fees simply cannot be interest is it because of that context that we should affirm. There are a number of authorities that support affirming your honor. Certainly the context and the fact that these arise in a deposit account under a deposit account agreement rather than as part of a creditor debtor relationship is is very important. Well, OK, where I'm having some trouble with this, though, is that even if you open a checking account, put money in your checking account, that's a deposit. But once you overdraft overdraw that account, if the bank steps forward with its own money and covers the overdraft, doesn't that change the nature of the relationship? All of a sudden, the the the checking account holder owes the bank money, which has been advanced to cover the shortfall. Then you've got a creditor creditor relationship. I mean, isn't the reality of the transaction that the overdraft coverage is a loan? The overdraft, given the context, again, the fact that it's the customer who's come to the bank, who's opened a deposit account, who's put his funds into the account and it's has is regarded in that sense as being the creditor in the deposit account context where the bank is the debtor. That's the context. This event of an overdraft is a service that's provided at the bank's discretion in the context of that of that relationship under that deposit agreement. It does not resemble a loan situation in which the customer approaches the bank, asks to borrow money and then agrees to terms on which on which to repay that money. Your argument is basically unless until you have that formal request for a loan, the question of interest does not arise at all. Your Honor, I think it's possible to imagine some scenario and then there are cases, particularly older cases at times in which banks have charged what is clearly interest for overdrafts have said you're overdrawing your account by ten dollars and we're going to charge you X rate over however long your account is overdrawn. This is entirely different from that. So that that also is a distinction you rely on, that it's a flat rate and nothing percentage based on principle. Yes, yes, that is. Are you are you are you arguing that 7.4001 is ambiguous or unambiguous? 7.4001 is plainly not ambiguous in favor of the plaintiff's position. In other words, there is no way that 7.4001A's definition of interest unambiguously includes these deposit account fees that arise in a deposit account service. So it's not you're saying it's not ambiguous. This provision is not ambiguous. I am saying I'm saying that it is that it cannot be interpreted to unambiguously include extended overdraft fees. If that is true, then why do we look at other sources? Why do we look at the letters of OCC? At best, Your Honor, the question of I say at best for the plaintiff. The question of whether these extended overdraft fees could potentially be included under the definition of interest in 7.4001, I think, is raised by the inclusion of 7.4002C, which says, as you're looking at the portion of the regulation that covers all other national bank charges and fees. There's that Section C says, if it's interest, you have to go back to 7.4001. So I think the question raised by this appeal is, should these particular extended overdraft fees, not the initial overdraft fees, just the extended overdraft fees, be surgically removed from that deposit account relationship and airlifted back through 7.4002C back to 7.4001? That question of what does 7.4002C relate to is ambiguous. And yes, I think it's absolutely wise. And for what specifically is ambiguous now? Whether these deposit account fees should be included in 7.4001A. There is nothing in 7.4001 or 7.4002 that explicitly answers that question. Okay. Then to get to your conclusion, then you rely on, I assume, the 2007 letter? I do, Your Honor, as well as the well-reasoned and thorough decision-making of the First Circuit Court of Appeals in the Fawcett case, the 11th Circuit that affirmed. And all of them feed back into the 2007 letter. Is that not true?  The Fawcett Court, for example, the First Circuit Court of Appeals, did, in one part of its opinion, give deference under our to the 2007 interpretive letter. However, it also said that even in the absence of our deference, the First Circuit Court would give respect under Skidmore to the 2007 letter for a number of reasons. The McGee Court, importantly, did not... Did the First Circuit apply our deference or Skidmore deference? The First Circuit, it applied initially our deference. And just as a reminder, that decision was made prior to the Kaiser opinion in the summer of 2019 that the plaintiff relies on here. But importantly, the First Circuit Court said also and said, quote, even absent our deference, quote, the 2007 letter was deserving of persuasive value on the basis that the fees arise in a deposit account context, that they're connected to overdrafts, which is undisputed. So you're telling me that the Fawcett Court majority relied on the 2007 letter? Yes, it gave that letter respect. Yes. And I was going to say also that the McGee Court did not refer in any way to the 2007 letter. And there are other cases that the district court here relied on that have not, such as Cargill, Armstrong, McGee. Counsel, just to be clear, for this court to agree with your position, can it rely on the regulations without reference to the 2007 letter? Yes, I think the regulations themselves show clearly that 7.4001 addresses interest in the context of a creditor-debtor relationship. 7.4002 covers deposit account fees, including this. OK, let me let me just go back to 7.4001 and the various examples it lists, which don't include the overdraft, extended overdraft fees. So it's not even there. It's not in either one of the regulations that you're relying upon. But 7.4001A does list, as an example, cash advance fees. That seems similar to what's going on here, doesn't it? After all, if the account is overdrawn, the bank covers the difference. Isn't that an advance of cash that they're charging fees? Why wouldn't that be an argument to put this in that regulation, 4.001 and not 4.002? I think, again, Your Honor, that that type of fee is one that arises where the relationship, the agreement, the entire context is that of a loan, where the customer has taken out a loan and has received a cash advance from the creditor. And that is not the situation that we're dealing with here. All right. I guess I'm still not clear on whether your argument is the regulations unambiguously support that these fees are not interest or that the regulations don't answer it. We need to go to the 2007 letter. I mean, is it one or the other? Certainly, if I have to choose, I will say that it is ambiguous, that this precise question is not answered by the explicit language in the regulations. My point really is just to say that the structure of the regulations indicates that these fees do belong under 7.4002. To the extent there is ambiguity, however, because the regulations, the language does not directly and explicitly answer the question before the court, we can look at the 2000, excuse me, at the OCC's interpretation. And there's two places. One is the 2001, the commentary that the agency made around the 2001 amendments. And of course, that was a formal rulemaking public notice and comment process. And then the other is the 2007 letter. Why not just go with our and Kaiser then? Why the retreat to Skidmore in your brief? The Skidmore is what applies here. We're not contending that the OCC's interpretations are entitled to our deference. So the First Circuit got it wrong? The First Circuit, the First Circuit made its decision before Kaiser. Kaiser has said that the court must find a make make a finding of and then that the OCC's pronouncements have to have to meet certain standards. We believe that this in this case, the OCC's pronouncements are very persuasive, but we're not asking the court to find that they that they necessarily meet the our standards. And and nor do they have to. The U.S. versus Meade case and the Skidmore doctrine plainly give the court authority to give these OCC these OCC interpretations persuasive authority. Well, the district court here also, along with the First Circuit, relied on our deference and not Skidmore. She did initially. And then in her in her second opinion, she made clear that in addition to that, to giving regard to the 2007 letter that she was relying on the multitude of court decisions that have pretty much get you back to the 2007 letter by and large. Many of those court decisions do do refer to this 2007 letter. Not all of them, however, again, I point the court to them. Well, if if we're into the world of our and Skidmore, don't we first have to have the district court determine, first of all, that the clear text that we are analyzing here, the CFR is ambiguous. And do we have that here? The 10th Circuit cases indicate that, yes, the court should find that the that the language of the excuse me, my time is up. That that the language of the regulation is ambiguous in order to give regard to an agency's interpretation. And yes, in this case, that is that is what the court should do. And it didn't do that here. Right. The district court did not. There is no reason why this appellate court cannot. I would point your honors to the Fowler decision from the 10th Circuit in which the district court had not applied the Skidmore doctrine and then and the appellate court did do so. Thank you. I think there's some rebuttal time for the appellant. Yeah, excuse me. Thank you, your honors. So a couple of things. One, very early in counsel's presentation, she mentioned that banks in the past have charged interest on overdraft sums. And I was very curious about about where that practice had come from. So in my preparation for the argument, I stumbled across a letter I mentioned earlier that 1984 interpretive letter. It's available at 1984 Westlaw one six four zero nine six. This is not cited in your brief. We'll need a letter. I can provide a 28 J letter. I wasn't sure. It's not new authority. You know, so I wasn't sure if that was appropriate. That usually doesn't stop counsel. I wished it would. But well, if I have your your permission, I will I will file something like that. But the bank had asked OCC, can we charge interest on overdraft sums? We charge a processing fee when a check is written against insufficient funds. Can we charge interest as well? And the answer came back. Yes, you can. That processing fee is a deposit account service charge. But you are also authorized to make loans and charge interest on those loans. And that's what you've done here. So you are authorized to charge interest. And one other point I wish to make, Judge Mathison, you raised the inclusion of cash advance fees in the list of illustrative interest charges. And I believe that includes deposit advance fees, which sort of undermines the defendant's argument that this regulation contains a very strict distinction between the depositor and lending functions. So those are the two points I want to make. My time is up. I'm happy to answer any questions. But if not, I will sit back down. Other questions from the panel? No, I'm good. None. Thank you. Thank you both for your arguments this morning. They're very helpful. The case is submitted.